UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BETTY JOHNSON,     Case No. 1:09-cv-936

    Plaintiff,     Spiegel, J.
                   Bowman, M.J.
    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Betty Johnson filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which Defendant disputes. For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On September 8, 2004, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging a disability onset date of March 16, 2004 due to pain (Tr. 59-61). She was 43 years old at the time of her alleged disability. (Tr. 59). After Plaintiff's claims were denied initially and upon reconsideration, (Tr. 23-24), she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On July 25, 2007, an evidentiary hearing was held in Cincinnati, Ohio at which Plaintiff appeared, accompanied by her attorney. (Tr. 374-423). At the hearing, ALJ Deborah Smith heard

1

testimony from Plaintiff, from Plaintiff's husband, and from Stephanie Barnes, a vocational expert. (Id.)

On August 15, 2007, ALJ Smith entered her decision denying Plaintiff's DIB application. (Tr. 10-22). The Appeals Council denied her request for review. (Tr. 4-6). Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements for disability insurance benefits on her alleged onset date of March 16, 2004, and continues to meet them through December 31, 2008.

2. There is no evidence that the claimant has engaged in any substantial gainful activity since her alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

    See Exhibits 3D, 4D, & 5D.

3. The claimant has the following severe impairments: a myofascial pain syndrome (20 CFR 404.1520(e)).

    ……………………..

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Careful consideration of the entire record shows that the claimant has the residual functional capacity to perform a range of medium work.
    ………………………..

6. The claimant is able to perform her past relevant work (20 CFR 404.1565).

    …………………………

7. The claimant was born on August 4, 1960, was 43 years old on her alleged onset date, and considered to be a younger individual (20 CFR 404.1563).

2

8. The claimant has at least a ninth grade, limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c) and 404.1566).

   …………………………...

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 16, 2004 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 15-22).  In short, the ALJ concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to DIB.  On appeal to this court, Plaintiff maintains that the ALJ erred by: 1) substituting her opinion for those of Plaintiff's treating physicians; and 2) failing to consider Plaintiff's intellectual and emotional limitations.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for DIB a claimant must be under a "disability" within the definition of the Social Security Act.  See 42 U.S.C. §§423(a), (d).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is

available in the regional or national economies. *See Bowen See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work;

and finally, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

Plaintiff alleges that the ALJ erred at Step 4 of the sequential analysis by concluding that she could perform at least some of her past relevant work. Plaintiff's past relevant work includes work as a factory assembler, stocker, cashier, and packer. (Tr. 71, 78). According to Plaintiff, her limitations prevent her from being able to perform any substantial gainful activity in the national economy, including her past relevant work, and require this court to reverse the Commissioner's decision and award benefits.

### B. The ALJ's Rejection of Treating Physician's Opinions

In her first assignment of error, Plaintiff complains that the ALJ improperly substituted her own opinions for those of Plaintiff's treating physicians. Specifically, Plaintiff criticizes the ALJ's failure to accept the functional limitations suggested by Dr. Baxley and Plaintiff's nurse practitioner, both of whom issued reports that Plaintiff contends were supported by multiple records from Group Health Associates and Mt.

5

Orab Regional Family Healthcare.  Plaintiff argues that the ALJ specifically erred by concluding that Plaintiff's medical records did not support a diagnosis of disabling fibromyalgia.

**Rejection of Diagnosis by Treating Physician**

A diagnosis of fibromyalgia is included on the list of Plaintiff's various diagnoses in many of Dr. Baxley's records, as well as in the records of a treating physician to whom he transferred care.  For purposes of evaluating Plaintiff's disability, Dr. Baxley completed an August 16, 2006  "Fibromyalgia and Myofascial Pain Functional Questionnaire" that indicates that Plaintiff meets clinical criteria for a diagnosis of fibromyalgia.  A similar assessment form completed in 2005 by Nelise Averdick, a nurse-practitioner, also contains a checkmark indicating that Plaintiff meets criteria for the diagnosis, with a notation that Plaintiff "may possibly" suffer from a connective tissue disease.  (Tr. 234).

Notwithstanding these records, the ALJ rejected the diagnosis of fibromyalgia, in part because she believed that a different diagnosis concerning another connective tissue disease -  myofascial pain syndrome - was more consistent with Plaintiff's medical records as a whole.

> There is a suggestion in the record that the claimant may have fibromyalgia (Exhibit 10F/9), although most treating sources find a myofascial pain syndrome.  The undersigned does not find fibromyalgia.  In fibromyalgia cases, oftentimes there are no objective tests to prove the diagnosis, and it becomes a diagnosis based on exclusion.  Generally, fibromyalgia can only be diagnosed by the elimination of other medical conditions which may manifest fibromyalgia-like symptoms.  *Preston v. Secretary of Health and Human Services*, 854 F.2d 815 (6th Cir. 1988).  In addition, in order to make this diagnosis, an individual must have 11 out of 18 positive trigger points in specific locations on the body.  While the record shows tenderness, specific trigger points are not identified, and the

6

> tenderness is mostly associated with her back, neck, shoulder, and arm pain secondary to overuse from the job she used to do as a drill press operator, not from generalized joint pains throughout her body.  She has been more commonly diagnosed with a myofascial pain syndrome.  Dr. Baxley indicates she had multiple tender points and meets the criteria for fibromyalgia (Exhibit 9F), but it appears he is a family physician with Regional Family Health Care (Exhibit 10F).  Some treatment has been by a nurse practitioner, who indicated the claimant "may have a connective tissue disease" (Exhibit 7F), although the remaining evidence does not show that she has been diagnosed with one or evaluated for this.  Most of her treatment has been from the Regional Family Health Center (Exhibit 10F) and Group Health Associates (Exhibit 2F), from family doctors, and the diagnosis of fibromyalgia is not given as a consistent diagnosis throughout these records, with the diagnosis more commonly being a myofascial pain syndrome (Exhibits 2F, 4F, 11F).  MRI testing of the neck and back have been unremarkable...along with x-ray testing..., and most of her complaints are not of generalized joint pain, but rather focus on her back, neck, shoulders, and arms associated with overuse from her job as a drill press operator.  It does not appear that the claimant has ever been evaluated by a rheumatologist who accepted the diagnosis of fibromyalgia, nor has she been evaluated by other specialists.  In addition, it does not appear that all avenues have been exhausted in this case regarding evaluation and treatment for her various complaints. ...At most, treatment has been with physical therapy and medication.  She has not been in mental health counseling or in long term pain management.  She has not been on the various types of strong pain medications oftentimes seen in fibromyalgia cases.... This record does not demonstrate that she suffers from fibromyalgia.

(Tr. 20).

As legal authority for her position that this case must be remanded due to the ALJ's failure to accept the diagnosis of fibromyalgia, Plaintiff relies heavily on *Rogers v. Commissioner of Soc. Security*, 486 F.3d 234, 243 (6th Cir. 2007) in which the Sixth Circuit remanded to the Commissioner for further review after holding that fibromyalgia "can be" a severe impairment, despite the fact that it cannot be confirmed through objective testing.  Several factors make Plaintiff's case for remand less clear-cut than the facts presented in *Rogers.*

Unlike Plaintiff, Ms. Rogers had been diagnosed with fibromyalgia by both treating physicians and a specialist who - in multiple records- repeatedly noted tender points of "classic fibromyalgia distribution."  Also, Ms. Rogers had been referred to a pain specialist as well as to a rheumatologist.  She had been prescribed more than ten medications, including the highest levels of pain medication available such as Vicodin and morphine.  Plaintiff Johnson has never been referred to any specialist.  On the other hand - and contrary to the express finding of the ALJ -Plaintiff's medical records reflect near-constant refills for prescriptions of Vicodin, which she takes several times per day according to the same records.  (*See, e.g.,* Tr. 308, 313-322, 327, 330-333).

In *Rogers*, the Sixth Circuit criticized the ALJ's rejection of the diagnosis despite evidence that the plaintiff had been "continually tested for and...increasingly exhibited the medically-accepted and recognized signs of fibromyalgia," and that the diagnosis had been made by a specialist in fibromyalgia.  *Id.* at 244-245.  As ALJ Smith explained, the present record contains more ambiguous proof of specific joint tenderness, and demonstrates neither referral to specialists or as extensive of "rule out" testing as was performed in *Rogers*.  In *Rogers*, the ALJ rejected the treating physicians' opinions without *any* explanation, whereas ALJ Smith offered a detailed explanation for her rejection of the diagnosis of fibromyalgia.

However, the strength of the ALJ's analysis in this case is undercut by two significant errors.  First, the ALJ appears to have assumed that the diagnoses of fibromyalgia and fascial pain syndrome are mutually exclusive, despite the lack of any medical support for that assumption.  While many of Plaintiff's records list one or the other of the two diagnoses, some records list *both*. (*See, e.g.*, Tr. 314, 356).  Second,

ALJ Smith made a significant factual error in stating that Plaintiff was not prescribed strong pain medication, and appears to have understated the amount of testing performed.  Although a record completed in September 2004 indicated that Plaintiff was taking only ibuprofen and Tylenol (Tr. 75), subsequent records reflected a significant long-term increase in multiple medications, including Vicodin for pain management. (*See, e.g.,* Tr. 308, 313-322, 327, 330-333).

The ALJ also rejected Dr. Baxley's diagnosis of carpal tunnel syndrome, citing the lack of objective tests typically used to confirm that diagnosis, and a specific finding by another physician that Plaintiff had no problems with fine or gross manipulative abilities.  However, the referenced physician appears to have treated Plaintiff for only one month.  (Tr. at 263).  With respect to carpal tunnel syndrome, the ALJ discounted Dr. Baxley's treatment notes because they reflect:

> a variety of complaints including depression, anxiety, chronic fatigue, irritable bowel syndrom and symptoms of carpal tunnel syndrome (Exhibit 9F).  His treatment records only showed, however, hyperactive knee and left biceps reflexes, and spasms on [t]he left side of the neck with a positive Spurling's sign (Exhibit 10F).

(Tr. 16).

> In August 2006, Dr. Baxley gave a residual functional capacity assessment for sedentary work ....  She could lift and carry less than 10 pounds.  She could perform fine and gross manipulations with the right hand 50% of the time and with the left hand 10% of the time.  She should not reach... Dr. Baxley provided limitations in the use of the hands due to a diagnosis of carpal tunnel syndrome.  However, there is no clear evidence of carpal tunnel syndrome.  Neurological examinations have been normal.  He found positive Tinel's and Phalen's signs on only one occasion.  Upon follow up, these signs were gone....Dr. Miller found mild weakness of grip strength, but full range of motion with no atrophy.  She specifically found no problems with fine or gross manipulative ability... As such, the opinion of Dr. Baxley is also given little weight.

(Tr. 20; see also Tr. 301-304 (Dr. Baxley's RFC)).  Because remand is already required for further review of the claim of fibromyalgia and its impact on Plaintiff's functional limitations, the Court also recommends additional review of records concerning Plaintiff's alleged diagnosis of carpal tunnel syndrome, which presents a closer issue.

**Rejection of Functional Limitations**

Disagreement about any specific diagnosis aside, the real issue in this case is the ALJ's rejection of the functional limitations suggested by Dr. Baxley and the nurse-practitioner on the two respective "Functional Questionnaires."  The limitations imposed by both of these treating sources would have rendered Plaintiff at least limited to a narrow range of sedentary work, if not completely disabled.  However, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a range of medium exertional work, including her past relevant work (Tr. 16).

A diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual.  *See Young v. Secretary of Health and Human Services*, 925 F.2d 146, 151 (6th Cir. 1990); *McKenzie v. Commissioner of Soc. Security*, 2000 WL 687680 at *5 (6th Cir. May 19, 2000).  Although the opinions of treating physicians must be considered, ultimately the determination of a claimant's residual functional capacity (RFC) is "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2).  An ALJ may reject a treating physician's opinions, provided that he or she states "good reasons" for doing so, as required by 20 C.F.R. § 404.1527(d)(2), §1527(d)(2).

In this case, however, the ALJ's rejection of the limitations suggested by Plaintiff's treatment team and conclusion that Plaintiff maintains the residual functional

capacity to perform medium work is not supported by substantial evidence in the record as a whole. There is no question that the ALJ relied heavily, if not exclusively, on the single RFC form completed by consulting physicians Charles Derrow and Dr. Gahman,[1] whose assessment was based solely upon a records review. (Tr. 286-293). Plaintiff justifiably complains that at the time of that assessment, November 17, 2004, "most of the claimant's medical records were not in the file and ...it was thought that most of her physical problems were orthopaedic in nature." (Doc. 7 at 6).

Dr. Baxley began treating Plaintiff some months after the consulting physicians' record review; his August 16, 2006 assessment form indicates a treatment relationship of approximately one year (Tr. 301).[2] In addition to including manipulative limitations ascribed to carpal tunnel syndrome, Dr. Baxley opines that Plaintiff is limited to sedentary work with sitting less than two hours at a time, and standing/walking less than two hours at a time. (Tr. 303-304).

The ALJ rejected a similar RFC assessment completed in April 2005 by nurse practitioner Averdick that limited Plaintiff to a narrow range of sedentary work. (Tr. 294-297). Obviously, Nurse Averdick's records and assessment also were unavailable to the consulting physicians during their November 2004 record review.

Despite the ALJ's error in relying on a record review by consulting physicians that failed to include review most of the salient records, Defendant argues that this Court should nevertheless uphold the RFC finding by the ALJ based on the numerous inconsistent statements by Plaintiff regarding her activities of daily living. See 20 C.F.R.

---

[1] Dr. Gahman merely affirmed the assessment of Dr. Derrow. (Tr. 293).

[2] Other records suggest that Dr. Baxley treated Plaintiff from September 14, 2005 to July 28, 2006.

11

§404.1529(c)(v); (Tr. 18)(noting Plaintiff admitted in 2007 that she cared for her young grandson and performed light tasks, including daily cooking, washing dishes, driving, laundry, finances, and caring for her own personal needs).  Although such inconsistencies provide some evidence for fewer limitations than those imposed by the two treating sources, the inconsistencies do not amount to substantial evidence in the record as a whole in light of the errors noted and the many treatment records that support greater limitations.  Nevertheless, this is not a case where reversal for an award of benefits would be warranted.  Rather, remand provides the appropriate relief.

  C. **The Claimant's Intellectual and Emotional Limitations and Combined Impact of Impairments**

Plaintiff additionally contends that the ALJ erred in failing to consider her intellectual and emotional limitations in connection with her other limitations. Specifically, Plaintiff relies on a February 15, 2005 evaluation by David Chiappone, Ph.D.  Dr. Chiappone concluded that, in addition to Plaintiff's diagnosis of depression, she had a borderline intellect and a GAF score of 55.  (Tr. 259-260).  The ALJ asked if Dr. Chiappone's report "in and of itself preclude any of the jobs that you've previously mentioned, this psych assessment?"  (Tr. 420).  The vocational expert opined that the assessment would not preclude work.  However, Plaintiff argues that the ALJ erred as a matter of law in failing to consider Plaintiff's "borderline mental capacity."  *Lucy v. Chater*, 113 F.3d 905, 908-09 (8th Cir. 1997).

Unlike the ALJ's assessment of Plaintiff's physical limitations, I conclude that substantial evidence supports the ALJ's assessment of Plaintiff's mental and/or emotional limitations.  Borderline intellectual functioning and depression do not

automatically render an individual disabled.  *See McClanahan v. Comm'r of Soc. Security*, 474 F.3d 830, 835 (6th Cir. 2006)(affirming decision that borderline and depression imposed no more than moderate restriction of daily activities).  The ALJ determined that Plaintiff had mild limitations with interacting appropriately with others, and was moderately impaired in pace, persistence and concentration.  She also determined that Plaintiff had the ability to complete one and two-step instructions but that her ability to concentrate would decrease over time, without strict time constrains or quotas, and that she had a moderately limited stress tolerance.  (Tr. 284).

> The claimant has been diagnosed with some depression and anxiety, even thought [sic] she really has not gotten any treatment for her mental health until very recently, after she filed her appeal for benefits...and which could account for some of her complaints.

(Tr. 20).  The limitations found by the ALJ are entirely consistent with Dr. Chiappone's comprehensive evaluation and the consulting examiner's report, which accepted Dr. Chiappone's findings.  (Tr. at 284).  Because the ALJ's assessment of Plaintiff's intellectual and emotional limitations is supported by substantial evidence, no remand is required on this issue.

### III.  Conclusion and Recommendation

A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary.  *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).  In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect

in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1.  The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2.  On remand, the ALJ be instructed to: (1) carefully review evidence of Plaintiff's allegations of additional limitations based on evidence of fibromyalgia and/or carpal tunnel syndrome; (2) properly review the medical evidence and give specific reasons for the weight given to the opinions of Plaintiff's treating physicians;

3.  As no further matters remain pending for the Court's review, this case be **CLOSED.**

                        */s Stephanie K. Bowman*
                        Stephanie K. Bowman
                        United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BETTY JOHNSON, | Case No. 1:09-cv-936 |
| Plaintiff, | Spiegel, J.<br>Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).